*John H. V. Arnold,* for appellant.   *Andrew L. Gardiner* and *Frederic A. Ward,* for respondent.

PRATT, J.   The appellant, for five years before the accident, had owned and collected rent from the defective building.   If, under those circumstances, he can avoid responsibility by alleging he had no personal knowledge that the fire-escapes were not erected, as required by law, the statute would be a snare, and not a safeguard.   The appellant argues that as the statute does not, in express terms, declare that fire-escapes shall be erected by the owner, the duty cannot be placed upon him by a judicial construction of the law.   The law enacts that any building occupied, or built to be occupied, as a manufactory shall be provided with such fire-escapes as shall be directed by the commissioner.   We think the initial duty rests upon the owner that he should bring the subject before the commissioner and seek his direction.   The statute is intended to protect human life.   Its intentions are easily discovered, and no reason is perceived why the court should strain after so strict a construction of its language as to deprive it of all useful operation.

The appellant argues that had plaintiff not given way to fright, and exercised a sound discretion as to the method of escape adopted, she might have found a safe egress by another window.   All those considerations were properly submitted to the jury.   Their finding was adverse to defendant, and was sustained by the testimony.   It follows that the judgment should be affirmed, with costs.

---

PEOPLE *ex rel.* TRUSTEES OF SCHOOL-DIST. NO. 25 *v.* BOARD OF TOWN
AUDITORS.

(*Supreme Court, General Term, Second Department.*   December 10, 1890.)

MANDAMUS—APPORTIONMENT OF SCHOOL FUNDS—CORRECTION.   ·

Town auditors were authorized by Laws N. Y. 1870, c. 591, to apportion certain town funds among the school-districts of the town in the same manner "as the public school moneys of the state are apportioned."   After they had made such apportionment, the previous apportionment of the state moneys was, on appeal to the superintendent of public instruction, declared erroneous, and ordered to be corrected; and, on a subsequent appeal to him, he ordered the town auditors to correct their apportionment to correspond therewith.   *Held* that, even if the superintendent had jurisdiction to review the action of the town auditors, they should not be compelled by *mandamus* to make such correction, as their statutory power to apportion the town moneys as the state moneys were in fact apportioned did not extend to the correction of a previous apportionment; it appearing, also, that the right of the relators was doubtful, as such corrected apportionment was alleged to be informal, irregular, and false.

Appeal from special term, Queens county.

Petition by the trustees of school-district No. 25 of the town of Hempstead for a *mandamus* against the board of town auditors of that town.   From an order denying the application, the relators appeal.   On the decision at special term, the following opinion was rendered by BARTLETT, J.:

"This application comes before the court upon the return of an order requiring the board of town auditors to show cause why a peremptory writ of *mandamus* should not issue commanding them, at their next meeting for the apportionment of money to the common schools under chapter 591 of the Laws of 1870, to correct the apportionment made to school-districts Nos. 1 and 25, on December 21, 1885, and June 5, 1886.   By these apportionments, school-district No. 1 received $154.70, which is claimed by the trustees of school-district No. 25, and the purpose of this proceeding is to secure payment of that amount. By chapter 591 of the Laws of 1870, the legislature provided for the election of a town treasurer by the people of Hempstead.   This officer was to receive, invest, deposit, and disburse, as therein prescribed, all moneys arising from the

sale or rental of any common lands, purchases, or privileges belonging to the town of Hempstead. The same act declared that 'the principal sum shall remain a permanent fund forever,' and also provided as follows: 'Sec. 8. The interest accruing, after deducting the expenses of the office of the said treasurer, shall be disposed of as follows: *First.* Two-thirds, or so much thereof as may be deemed necessary for the common schools of said town, to be determined by the said board of town auditors from an inspection and examination of the last annual reports of the trustees and boards of education of said town, shall be apportioned among the several school-districts of said town, in the same manner, and upon the same basis, as the public school moneys of the state are apportioned; and the said treasurer, upon receiving from the said board of town auditors a certificate of such apportionment, shall pay to the trustees and boards of education of the several school-districts of said town, the amount to which they are respectively entitled for the current year. *Second.* The remaining one-third of interest, or so much thereof as may be deemed necessary by said board of town auditors, shall be paid by said treasurer to the overseers of the poor of said town, upon the certificate of said board, and appropriated and disbursed by said overseers, for the support of the poor of said town.' Garden City was formerly included in school-district No. 1, of the town of Hempstead, and a branch school was maintained there. By chapter 152 of the Laws of 1885, (passed April 20th,) certain portions of the village of Garden City were constituted a new school-district, to be known as 'No. 25.' This district was organized in August, 1885. In the annual apportionment of the public school moneys of the state, however, for the school year 1885-1886, school-district No. 1 received the same amount as though the new district had not been formed, and school-district No. 25 received nothing. Thereupon, the trustees of school-district No. 25 appealed to the state superintendent of public instruction, and that officer, on November 30, 1886, rendered a decision holding that the apportionment had been erroneous, and directing that school-district No. 1 should pay over to school-district No. 25 a part of the sum which it received in the apportionment of 1886; or, in case of a failure to do so before the apportionment of 1887, that the share of school-district No. 1 therein should be correspondingly reduced and the share of school-district No. 25 augmented. Meantime, however, and before this correction by the state superintendent, the board of town auditors, acting under the authority conferred upon them by the statute relative to the interest on the fund derived from the common lands, had proceeded to apportion a part of such interest among the several school-districts of the town, just as the public school moneys of the state had been apportioned and distributed. In so doing, they complied with the mandate of the law at the time. There is no dispute as to this point. But the contention of the relators is that, inasmuch as the apportionment of the public school moneys of the state for the school year 1885-1886 has been declared erroneous, and has been corrected by the state superintendent, so far as these two litigating districts are concerned, it is the duty of the board of town auditors to correct their apportionment of the common land moneys accordingly; and that they should do this, in the only way they can do it, by withholding from school-district No. 1, on the next apportionment, a sum equal to the amount overpaid in consequence of the erroneous apportionment of the state moneys in 1885-1886, and turning this sum over to school-district No. 25. The trustees of school-district No. 25 endeavored to get the board of town auditors to take this course, but they declined. Then the trustees appealed again to the state superintendent of public instruction, asserting that he had jurisdiction to compel the board of town auditors to correct the apportionment, and pay the new district the money which it claimed. On the first appeal, relative to the apportionment of the state moneys, the superintendent said there was some reasonable question as to the power of his department to correct the apportionment of the local trust fund

applicable to school purposes, as provided by chapter 591 of the Laws of 1870, (relative to the interest on the proceeds of the sale of common lands;) but it was not necessary to decide the question then. On the second appeal, however, the point was squarely presented, and the state superintendent determined it adversely to the board of town auditors, and made an order directing them to correct their alleged errors in their apportionment of the town moneys, so as to make such apportionment correspond with the apportionment of state moneys as corrected by the superintendent; and provided, unless the re-apportionments should be previously adjusted, 'that said board, at the time of the next apportionment and distribution by them of the town moneys to schools, shall withhold from any district which has been paid a larger sum than properly belongs to it, as shown by such reapportionments, the excess so paid, and shall pay to any district which has received less than its share, as shown by such reapportionments, the sum to which it may hereby be shown to be entitled.'

"I regard it as extremely doubtful whether the state superintendent of public instruction has jurisdiction to review on appeal any action of the board of town auditors of Hempstead under chapter 591 of the Laws of 1870. But in the view which I take of the present case, it may be assumed, for the purposes of this decision, that the state superintendent may lawfully direct these town auditors to do whatever a court would direct upon the same state of facts. It will not be contended that he can go further. In my opinion, however, the functions of the board of town auditors are so limited by the statute under which they act that a court which commanded them to do what is asked on this application would command them to exceed their legal powers. The fact that the remedy would be a convenient method of correcting an error which the board of town auditors did not commit, and for which it is in no wise responsible, is not a sufficient argument in favor of such a course. The statute which prescribes the mode in which the board shall apportion the interest moneys derived from the sale of the common lands—that is to say, 'in the same manner, and upon the same basis as the public school moneys of the state are apportioned '—plainly contemplates a reference to the apportionment of the state moneys as made at the time when the auditors act in apportioning the town moneys. This is the standard by which they are to regulate their action, assuming the apportionment of the state moneys to be made according to law. Their safe and proper course is to apportion the town moneys as the state moneys are in fact apportioned. This they did in the case at bar. The town treasurer distributed the town moneys accordingly. Thereupon, the board of town auditors, who had complied with the law in letter and spirit, became *functus officio,* so far as the money thus distributed was concerned. It had finally passed beyond their control, and to those who, at the time it was paid, were, as against the board of town auditors, legally entitled to receive it. If, at the time of such apportionment, the trustees of school-district No. 25 had demanded of the town auditors the portion of the town moneys which they now claim, the town auditors would have been bound to refuse the demand. Can the subsequent decision of the state superintendent, in correcting the apportionment of the state moneys, have a retroactive effect upon the completed action of the board of town auditors in apportioning and distributing the school moneys of the town?

"In considering this question, it should be borne in mind that the board of town auditors is not authorized to do anything with the town moneys which it concludes to apply to school purposes, except to apportion those moneys as the state school moneys are apportioned, and certify such apportionment to the town treasurer. No authority to correct any previous apportionment is conferred upon the board by the terms of the statute under which it acts. As has already been shown, such apportionment should correspond with the actual apportionment of the state school moneys for the same year, It might,

perhaps, be held that the direction by the state superintendent to correct in 1887 the mistake made in the apportionment of the state moneys as between these school-districts in the school year 1885–1886, became a part of the apportionment of the state moneys in 1887; and, therefore, if the town auditors in 1887 had made the correction now sought, they might not have exceeded their statutory powers, inasmuch as in apportioning the local fund they would have followed the apportionment of the state moneys for that year. It seems to me that to withhold any portion of the town moneys from one district, and pay it over to another, at any period later than the year in which the correction directed by the state superintendent in the apportionment of the state moneys was actually made, would be to do more than the town auditors may lawfully do under the statute. Their duties are merely to take and certify an apportionment of the town moneys after the manner of the apportionment of the state moneys. The statute evidently contemplates annual action on their part; for, upon receiving their certificate, the town treasurer is directed to pay to the trustees and boards of education of the several school-districts 'the amount to which they are respectively entitled for the current year.' When they have apportioned the town moneys as the state moneys are apportioned, and have made their certificate to the town treasurer, and he has paid out the amounts as therein directed, I think the town auditors have exhausted their powers under the statute, with reference to that particular apportionment. Nor does it seem to me that the town auditors in a subsequent year, when the *personnel* of the board may have wholly changed, can correct an error into which their predecessors may have fallen, unless possibly in the case already suggested, where in that very year the state apportionment is modified in accordance with a decision of the state superintendent, and therefore the auditors in making a similar correction in the town apportionment might be said merely to follow the apportionment of state moneys as then actually made. To attempt to rectify an alleged mistake, however, several years after the error in the state apportionment which led to the mistake has actually been corrected, is not to apportion the town moneys now to be divided as the state moneys are now to be apportioned, but to exercise an independent power of correcting past errors in the action of town auditors, which I do not think is conferred upon the board by the statute, either expressly or by fair implication.

"It is argued that the members of the board of town auditors are trustees of moneys for the benefit of common schools, under title III, art. 2, §§ 15–17, of the consolidated school act, (2 Rev. St., 7th Ed., 1150,) and hence are subject to the supervision and advice of the superintendent of public instruction, (section 17.) These provisions, however, seem to have no application to the fund derived from the sale of the common lands of Hempstead. That fund is dealt with by the legislature in chapter 591 of the Laws of 1870, and apparently was not intended to be brought under the general laws of the state relating to trusts for schools. Town auditors are not mentioned in the provisions of the consolidated school act above cited as possible trustees thereunder, and, indeed, the Hempstead town auditors are not vested as trustees, or otherwise, with the legal title to any of the money they apportion. But even if they can be regarded as trustees over whom the state superintendent has supervisory authority, it is quite clear that neither he nor the court can compel them to take any action which they might not lawfully take without the exercise of any constraint upon them; and I have already expressed the opinion that they do not possess any power to reserve a certain sum from the town moneys at the next apportionment, which would otherwise go to school-district No. 1, and devote it to the payment of the Garden City district, in order to correct an error made in 1885–1886, and corrected by virtue of an order of the state superintendent, so far as the apportionment of the state school moneys were concerned in 1887. To the extent which has

been indicated, I am constrained, by my view of the law, to differ from the conclusions reached by the learned and accomplished superintendent of public instruction. If any judicial remedy exists in behalf of the relators, it would seem to be by an action against the trustees of school-district No. 1 for money had and received; but whether the relators can maintain such a suit or not, I am satisfied that a direction to the board of town auditors to do what is desired in this proceeding would be a direction to exercise greater authority than is bestowed upon the board by chapter 591 of the Laws of 1870. For these reasons, the application for a peremptory writ of *mandamus* must be denied, with $10 costs."

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Robert T. Varnum, (Asa Bird Gardiner,* of counsel,) for appellants. *James S. Allen, (Augustus N. Weller,* of counsel,) for respondents.

PRATT, J. The opinion at special term so fully discusses all the questions of law and fact involved in this matter that it seems useless to write another opinion which must necessarily go over the same ground. Indeed, unless the decision of the state superintendent is *res adjudicata* upon the whole matter, it is doubtful that the relators are legally or equitably entitled to the moneys sought to be recovered here, from the fact that the report upon which the so-called "corrected apportionment" was made is claimed to be informal, irregular, and false. If the relators have any remedy it is by an action in which all the facts may be conclusively settled. Order affirmed, upon the opinion rendered below.