[No. 22730. Department Two. April 27, 1931.]

CHESTER A. MOORE, *Respondent*, v. DRESDEN INVESTMENT COMPANY, *Appellant.*[1]

[1]Reported in 298 Pac. 465.

290

*Preston, Thorgrimson & Turner* and *James A. Haight,* for appellant.

*John M. Boyle, Jr.,* and *George E. Mathieu,* for respondent.

MILLARD, J.—Alleging the proximate cause of personal injuries sustained by him in the destruction by fire of the Portland Hotel, in which he was a guest, was the failure of the owner of the building to provide more than one fire escape, and the obstructing of that fire escape in violation of an ordinance of the city of Seattle, plaintiff instituted this action to recover from

the owner of the building for the injuries suffered. Plaintiff alleged that the building

". . . was constructed and maintained without affording adequate protection to its guests in case of fire, and was maintained without adequate fire escapes as required by the laws of the State of Washington and did not have adequate or sufficient fire escapes for the number of guests therein contained, and plaintiff further alleges that it was so maintained in violation of the ordinance . . . That on or about the 21st day of July, 1913, the city council of the city of Seattle duly passed a certain ordinance . . . which ordinance and more particularly sections 601, 602 and 640 thereof, is still in force and effect and was so in force and effect on the said 17th day of October, 1929; that said ordinance is known as Ordinance No. 31578, entitled 'An ordinance constituting the building code for the city of Seattle, relating to and regulating the construction, alteration, repair, use and occupation of buildings and structures, providing penalties for violation, and repealing all ordinances or parts thereof in conflict herewith.' That said defendant in maintaining said building aforesaid violated said ordinance and the above mentioned sections thereof in that the said building was not provided with good and safe means of egress to provide any safe means of escape; that said building being used as a hotel and place of habitation and being over two stories in height was provided with only one fire escape, and did not have additional fire escapes sufficient in number and so located as to provide sufficient means of egress, and the one fire escape provided did not open directly from the hall or passageway to the outer wall of said building on the second floor, but on the other hand was obstructed by a sleeping room at the end of the hall. . . ."

The three sections of the ordinance pleaded and admitted in evidence read as follows:

"Section 601. All buildings shall be provided with good safe and sufficient means of egress in case of fire or panic. Such means of egress from floors not at

grade shall be by means of open or enclosed service stairways, fireproof tower stairways, fire escapes, fire escape ladders, through adjoining buildings, or other equivalent means approved by the superintendent of buildings. Besides the means of egress hereinafter provided, there may be required such additional means of egress as are necessary to provide good, safe and sufficient means of escape. There shall be at least one means of egress for each division between division walls.

"All required means of egress and all required or necessary approaches thereto shall be kept free from obstruction and all such required or necessary approaches shall be at least equal in width to the required width of the means of egress which they serve.

"The following requirements of this part relating to stairs do not apply to dwellings and buildings appurtenant thereto except as specifically provided."

"Section 602. Every building two stories in height from the lowest street or alley grade shall be provided with at least one stairway.

"Every building three stories high from the lowest street or alley grade shall be provided with at least one stairway and one public fire escape ladder.

"Every building more than three stories in height from the lowest street or alley grade, hereafter erected or altered to the extent of more than 50 per cent of its original cost, shall be provided with at least one stairway and at least one fire escape constructed as hereinafter provided. In factories, workshops, stores, places of habitation, refuge and detention over two stories high, additional fire escape stairways, fire escape ladders, fireproof tower stairways, or open service stairways shall be provided sufficient in number and so located that from every room or connected suite of rooms there shall be at least two of the above mentioned means of egress available without passing any open stairway, elevator pit, or open light well. One of such means of egress available from any room or connected suite of rooms may be a private fire escape available only for the occupants of such room or connected suite of rooms.

"The means of egress from towers shall be good, safe and sufficient and the number, location, construction and enclosures of such means of egress shall comply with such reasonable regulations as the superintendent of buildings may prescribe."

"Section 640. All fire escapes shall be kept clear of all obstructions whatsoever. Every public fire escape ladder or fire escape shall open directly from a hall or passageway to the outer wall of the building. A door or window shall open into each fire escape in the building. In buildings not over six stories high, used for office or business purposes in which no one sleeps except the janitor and his family, such fire escape ladder or fire escape may be located in such manner and position as to make the same easily and readily accessible through some passage or open room leading thereto from the main hallways. The door of such room shall have no lock or bolt or other device whereby the same can be fastened; or such door may have a fastening device provided the door contains a full-sized glass panel extending to within 2′ 6″ of the floor and provided such fastening device can be readily opened from the outside after the glass is broken."

Admitting there was only one fire escape, and that a fire occurred, defendant alleged that, prior to the fire, the premises had been leased to a third party, who had covenanted to make repairs and to comply with all laws and ordinances; that, at the time of the fire, the premises were in the possession and control of the assignee of defendant's lessee; and also pleaded, as additional affirmative defenses, contributory negligence and assumption of risk. The trial of the cause resulted in verdict for $725 in favor of the plaintiff. From the judgment entered, motions for judgment notwithstanding the verdict and for a new trial having been overruled, the defendant appealed.

The facts are as follows: A three-story brick building in Seattle, owned by appellant, was destroyed by fire about five o'clock the morning of October 17, 1929.

The Portland Hotel, in which respondent had been a paying guest for about three weeks prior to the fire, was located on the second and third floors of the building. The appellant did not own or operate the hotel business, which was conducted by an assignee of appellant's lessee.

The front entrance, which is on the east side of the building, was by means of stairs leading up from the street, opening into a stub hall. The stub hall opened into a main hallway, extending east and west. Respondent's room was on the second floor, across the main hall from the stairs. The fire escape was located in the rear of the building. Between the fire escape and the main hallway was a room known as room 10, which, it was testified, was vacant on the night of the fire. The door to this room contained a glass panel and was equipped with ordinary door knobs, but the tongue lock had been removed some time prior to the fire, and there was no mechanical locking device on the door.

It appears that, about eighteen months prior to the fire, the building was inspected by an official of the Seattle fire department, at which time there was storage in room 10 and a lock was on the door to that room. On the next inspection, the room was unoccupied and the lock had been removed. In the glass panel was a fire escape placard, indicating the location of a fire escape through this room. That is, it was necessary to open the door to room 10 and go through the doorway to get to the one fire escape. In front of the room was a red light, directing persons to the fire escape. There was testimony that the window opening from room 10 to the fire escape was large, free acting, and not in any way defective.

The fire originated between the first and second floors, and the burning was such in the hallway on the

second floor in the vicinity of the stairway that it was impossible for the respondent to make his escape by the stairway. The respondent testified that when awakened the fire was about five feet high in the hall; that he got his clothes and went to the front of the building, but no fire escape was there. He then went to the rear of the building, where he caught up with some other men in front of room 10. A large man was immediately ahead of respondent and had difficulty in opening the door. Whether the door jammed, something held it from the other side, or the reason for the difficulty and delay in opening the door, is not disclosed. Respondent and the others were delayed at that door for a period of four minutes.

When the door was finally opened the fire had arrived at that point, where respondent received the burns for which he seeks to recover. After the door of room 10 was opened, the escaping guests went through that room to the fire escape. Again the respondent was preceded by the large man, who again found it difficult to get on the fire escape, and had to back out through the window opening on to that platform. Flames were then coming through the window, and respondent was compelled to slide down a pipe alongside of the fire escape.

Respondent contends that §§ 601, 602 and 640 of ordinance No. 31587 impose upon the owner of the building the duty of supplying adequate means of egress, and that, as respondent was injured by a failure of the owner of the building to comply with those provisions of the ordinance, he may recover from the owner.

Section 601 provides that all buildings shall be provided with good, safe and sufficient means of egress in case of fire, which shall be kept free from obstructions; section 602, that every building three stories in

height shall be provided with one stairway and one fire escape, and that places of habitation over two stories high shall be provided with additional fire escape ladders sufficient in number and so located that from every room there shall be at least two means of egress available without passing any open stairway, elevator pit, or open light well; and section 640, that all fire escapes shall be kept clear of obstructions; that every fire escape shall open directly from a hall or passage to the outer wall of the building, provided that in buildings in which no one sleeps except the janitor and his family, the fire escape may be located so as to make the same easily accessible through some passage or open room leading from the main hallway.

Appellant insists that respondent cannot recover, having failed to show some breach of duty owing by appellant to respondent; that respondent was a paying guest in the hotel, which appellant did not own or operate; that the appellant landlord owed no duty to its lessee except not to wilfully injure him, and that the rights of the respondent guest or sub-tenant of the tenant are in no way superior to the rights of the tenant himself. Appellant further argues that the Seattle building code does not confer any additional rights on respondent, nor does it modify the general law of landlord and tenant, which is the measure of respondent's rights against appellant; that the building code requirements as to means of egress do not apply to the owner of a building who is not in possession or control thereof; and that, in any event, there was no violation of the ordinance with respect to providing adequate means of escape from the building in case of fire.

We have, as appellant contends, heretofore followed the general rule that, in the absence of a covenant to that effect, the owner of a building is not obligated to make repairs or to keep the property in proper condi-

tion for the uses intended. *Clarke v. Yukon Investment Co.,* 83 Wash. 485, 145 Pac. 624, Ann. Cas. 1916E 625. We have also held that, as a general rule, the landlord is not liable for injuries to third persons during the tenancy by reason of failure to repair the demised premises. *Larson v. Eldridge,* 153 Wash. 23, 279 Pac. 120. Under a statute requiring hotel buildings to be equipped with fire escapes, we held in *Clarke v. Yukon Investment Co., supra,* that the duty and expense of construction devolved upon the lessee, as there was no covenant in the lease imposing the duty on the landlord. While the duty was primarily that of the lessee in possession, and the expense of the installation of the fire escapes was to be borne by the lessee, we did not hold (that question was not presented) that, by such a covenant, an owner could relieve himself from liability to third persons for injuries if occasioned by a dangerous condition existing at the time the premises were leased and of which dangerous condition the lessor had knowledge or notice. The sole question presented was whether the expense of installation should be borne by the lessor or lessee.

*Bolden v. Independent Order of Odd Fellows,* 133 Wash. 293, 233 Pac. 273, is not in point. Plaintiff, the guest of a club using a building owned by the defendant, sought to recover from the defendant for injuries sustained by him in falling down a dark stairway of the defendant's building. Demurrer to the complaint was sustained, and judgment entered dismissing the action. On appeal, the judgment was affirmed. We held that, the complaint failing to show that the injured plaintiff was on the premises by the invitation, express or implied, of the owner, it would be presumed that he was a trespasser; that the most favorable interpretation that could be given to the complaint was

that the club using the building was a bare licensee; that

"To a bare licensee the only duty which the owner of the premises owes is not to wilfully injure him. An examination of this complaint shows no charge of wilfulness. The rule as generally laid down is found in Thompson's Commentaries on the Law of Negligence, vol. 1, § 945: 'The owner or occupier of real property is under no obligation to make it safe, or to keep it in any particular condition, for the benefit of *trespassers, intruders, mere volunteers, or bare licensees,* coming upon it without his invitation, express or implied.'

"It would seem, therefore, that the complaint was insufficient in that it does not allege any facts showing that the Sultan Commercial Club had any greater rights against the respondent than those accruing to a bare licensee, or any facts showing that the appellant was more than a guest of the Sultan Commercial Club."

Sections 601, 602, and 640 of ordinance No. 31578 require that certain kinds of buildings shall be provided with adequate means of egress for escape of tenants in case of fire. Appellant contends that those sections do not specify the person upon whom the duty of compliance therewith is placed; that no language can be found in the ordinance expressly imposing such duty upon the owner of a leased building; that, in the absence of an affirmative covenant upon a landlord to repair, a person who is on the premises by invitation of the tenant must look to the tenant, since the possession and control and duty to repair are in him.

Is the appellant, as owner of a building required by city ordinance to be equipped with fire escapes and other means of egress, relieved from liability to a third person injured because of the absence from that building of adequate means of escape from fire, if such building is in the possession of a tenant under a lease in which the lessee covenants to make repairs and to

comply with all laws and ordinances? That is the question which is before this court for the first time, presented by the facts in the case at bar.

■ The duty is imposed by the ordinance of providing sufficient fire escapes upon hotel buildings for the benefit of the guests of such hotels, so that, in case of fire, they may have a way to safety. The ordinance clearly imposed the duty upon the owner, and though the obligation be likewise that of the lessee, it would be indeed a strained construction to hold that it is the exclusive duty of the lessee or tenant to install fire escapes. To so interpret the ordinance would be to defeat the purpose the city council had in mind, the promotion of the safety of the hotel guests.

Section 102 of ordinance No. 31578 reads as follows:

"The building code shall apply to construction, occupancy, use, maintenance, moving, demolition, alteration and repair of all buildings, . . . and shall be binding upon all owners, lessees, agents, architects, contractors, engineers, foremen and other persons having charge of the construction, occupancy, use, maintenance, demolition, alteration or repair of the structures or equipment to which this code applies."

Section 133 defines an owner as "any person having title to, or control as guardian or trustee of, a building or property."

In *Lee v. Smith*, 42 Ohio St. 458, 51 Am. Rep. 839, the court held that a statute requiring "any agent or owner of any factory, workshop, tenement house, inn or public house" to install fire escapes, imposed such duty on a tenant using a part of a building for factory purposes, and not upon the owner of the building.

"And a similar construction was placed upon a statute imposing the duty upon owners, superintendents or managers of factories, the owners or keepers of hotels, and the owners or landlords of tenement houses and their agents *(Schott v. Harvey,* 105 Pa. 222; *Keely*

*v. O'Conner,* 106 Pa. 321), and so it has been held that the proprietor of a hotel, and not the owner of a hotel building, was bound to provide the escapes under a statute requiring this to be done by the 'owner, proprietor, lessee or keeper of every hotel, boarding and lodging house, school house, opera house, theatre, music hall, factory or office building.' *(Johnson v. Snow,* 102 Mo. App. 233; *Adams v. Cumberland Inn Co.,* 117 Tenn. 470.) On the other hand it was held that the owner of the building was bound to erect fire escapes when the statute provided that all buildings over a certain height should be provided with a fire escape and that the municipal authorities should serve notice on 'the owner or owners, trustees, lessee or occupant' to erect such escapes, and further provided that all such buildings thereafter erected should be, upon or before their completion, provided with fire escapes *(Landgraf v. Kuh,* 188 Ill. 484; *McCulloch v. Ayer,* 96 Fed. 178), and the same construction was placed upon a statute requiring every building in which any manufacture or business is carried on, requiring the presence of workmen above the first story, as well as certain other classes of buildings, to be furnished with fire escapes, and providing that the municipal authorities should notify the occupant and also 'the owner thereof, if known,' of the need of such escape *(Carrigan v. Stillwell,* 97 Me. 247)." Tiffany, Landlord and Tenant, p. 673, § 100.

This is an action in tort. It is an action for negligence, and lies for the failure of the appellant to perform a duty imposed by law. The obligation of appellant as to the respondent, a third person, is not under the appellant's contract with its lessee, but under the law, the city ordinance.

" . . . where the legislature of the state, or the council of a municipal corporation, having in view the promotion of the safety of the public, or of individual members of the public, commands or forbids the doing of a particular act . . . the general conception of the courts, and the only one that is reconcilable with reason, is that the failure to do the act commanded, or

the doing of the act prohibited, is negligence as mere matter of law, otherwise called negligence *per se;* and this, irrespective of all questions of the exercise of prudence, diligence, care or skill; so that if it is the proximate cause of hurt or damage to another, and if that other is without contributory fault, the case is decided in his favor, and all that remains to be done is to assess his damages.'' Thompson on Negligence, vol. 1, § 10.

We are not inclined to follow *Schott v. Harvey,* 105 Pa. St. 222, 51 Am. Rep. 201; *Keely v. O'Conner,* 106 Pa. St. 321, and *Lee v. Smith,* 42 Ohio St. 458, 51 Am. Rep. 839, and hold that the lessee and not the owner is the ''owner'' of the building under a statute or ordinance imposing the duty upon the owner of a building to erect fire escapes. It is not a sound rule which permits the owner to evade liability for injuries sustained by reason of his breach of such duty by incorporating in the lease a covenant requiring the lessee to make all repairs and to comply with all statutes and ordinances; particularly so when, as in the case at bar, at the time of making the lease the fire escapes had not been installed, as commanded by the ordinance. It is true that at the early common law the landlord was not required to install fire escapes. One of the reasons underlying that rule was that there was little need of fire escapes. The tenants then lived on the ground floor. That reason does not now obtain, hence the reason for the rule no longer existing, the rule may not be invoked.

''But in the modern city, where population is congested and many families or thousands of employees or tenants are crowded into a single building, a proper regard for human life requires compulsory provision against the danger by fire, and statutes with this object in view should receive a strict construction which will further their purpose, rather than one so strict

as to deprive them of all useful operation." Thompson on Negligence, vol. 1, § 1149.

The duty to install the fire escapes is imposed by the ordinance upon the owner of the building. That the lessee is likewise obligated by the ordinance does not operate to absolve the owner of liability for his failure to obey the ordinance. The appellant did not install the fire escapes as required by the ordinance, nor did it require its lessee to perform that duty. While, as between the appellant and its lessee, the expense of installation of the fire escapes may devolve upon the latter, the appellant's liability for its own negligence in failing to perform a duty imposed by the ordinance can not be shifted or delegated by a lessee's covenant to repair the leased premises.

"Even the owner's entire surrender of control to a lessee will not relieve him from liability to *third persons* for the premises being, at the time of such surrender, in a condition dangerous to the public, or with a nuisance upon them, or in such condition that they must necessarily become a nuisance by user; for by the act of letting, he, in law authorizes the continuance of the nuisance, and is, therefore, liable to strangers for injuries suffered therefrom. And the fact that his lessee covenants to repair furnishes him no protection; for the mere relation of lessor and lessee has no quality which enables the lessor to evade responsibility for his own acts by referring persons injured thereby to a third party for relief." Shearman & Redfield on Negligence, vol. 3 (6th ed.), § 709-a.

The facts in *Yall v. Snow*, 201 Mo. 511, 100 S. W. 1, 119 Am. St. 781, 10 L. R. A. (N. S.) 177, are very similar to the facts in the case at bar. The supreme court of Missouri held that the owner of a building, and not of the business, is referred to in a statute requiring the owner, proprietor, lessee or keeper of certain kinds of buildings to place fire escapes thereon; and that the

owner of the building is liable to one sustaining injuries by reason of the absence of such fire escape, though such injured person is a hotel guest of the owner's lessee. The plaintiff in that case brought an action to recover for the death of her husband by the burning of a three-story brick building, owned by the defendant and leased by him to the Gillhams, who operated a hotel therein. The death of the deceased, a guest in the Gillham's hotel, was alleged to have been caused by the failure of the owner of the building to install sufficient fire escapes. Demurrer to the complaint was sustained. On plaintiff's appeal, the judgment in favor of the defendants was reversed. The court said:

"At common law the owner of a building, not particularly exposed to the danger of fire from the character of the work to be carried on in it, was not bound to anticipate the possibility of remote danger from fire, or that its occurrence would put in jeopardy the lives of his employees or tenants, and the law did not require, where the building was properly constructed for its intended use and purpose, the construction of fire escapes; the ordinary means of escape by stairs, halls, doorways and windows being deemed sufficient. . . . In sustaining the demurrer to the petition, the learned circuit court evidently was of the opinion that, under the act of 1901, the duty of providing outside fire escapes was not imposed upon the owner of the building, but upon the person or persons who were in the possession and occupancy of the building at the time the act of 1901 took effect and became operative; and that, inasmuch as the defendant owner had, on the 25th of July, 1899, prior to the enactment of the said act, leased the premises to the Gillhams for a term of ten years from the first of September, 1899, and the said Gillhams were in possession thereof at the time of the fire which occasioned the death of the plaintiff's husband, the defendant was not liable for the failure to provide said structure with fire escapes attached to the exterior of the said building, as required by the act

of 1901. . . . The decisive question arising upon this record is: Was the circuit court right in holding that, under the terms of this statute, the owner of a leased building is not required to provide his building of the character described in the act with fire escapes, as provided by the act? . . .

"We are unable to adopt the construction put upon this act by the circuit court. The language of the statute is: 'The owner, proprietor, lessee, or keeper of every hotel,' etc., 'in this state, which has a height of three or more stories, shall provide said structure with fire escapes,' etc. The law places this obligation upon the 'owner,' and, for the purpose of this case, *it is entirely immaterial that some other persons, to-wit, the lessees, may also be liable.* There are no such qualifying words appended to owners, proprietors, etc., as would justify us in holding that these words only mean the party lawfully in possession when the act took effect, or when the fire occurred. The command is plain and unambiguous, and is directed to the 'owner,' and the fact that it is also directed to the 'lessee,' or the 'keeper,' of the premises in no wise excuses him from a failure to obey the statute. The statute is a most salutory one and remedial in its character. Its object is to protect human life, and, as said by the supreme court of New York in *McLaughlin v. Armfield,* 58 Hun. 1. c. 378, 12 N. Y. Supp. 165: 'No reason is perceived why the court should strain after so strict a construction of its language as to deprive it of all useful operation.' The lawmakers have seen fit to impose this duty of providing fire escapes upon hotel buildings and other structures mentioned in the statute for the benefit of guests of such hotels, and the operatives therein employed, so that in case of fire they may have a way of escape. Not only does Sec. No. 1 designate the 'owner' as one of the persons whose duty it is to provide fire escapes, but Sec. 4 of the statute reinforces his liability by providing: 'All buildings hereafter erected in this state, which shall come within the provisions of this law, shall, upon or before their completion, be provided with fire escapes of the kind and number and in the manner set forth in

this law, and any violation of this section shall constitute a misdemeanor on the part of the owner of such building, punishable as provided in Sec. 5.' As to all buildings, then, erected after the passage of the act, it is obvious that the duty rested exclusively upon the owner himself.

"Counsel for the defendant have favored us with an exhaustive brief as to the meaning of the word 'owner,' and as to the signification which should be attached to it in this statute, in *Schott v. Harvey,* 105 Pa. 1. c. 228, 51 Am. Rep. 201, the court very aptly remarked: 'A number of authorities were cited showing the construction which has been placed upon the word "owner," both by the legislature and the courts. But the meaning of the word depends in a great measure upon the subject-matter to which it is applied; and, as it is used in each of the instances cited in an entirely different connection, they throw scarcely a glimmer of light upon the question. The term "owner" is undoubtedly broad enough to cover either view of the case.' If the construction for which the defendant contends should be adopted, it would convict the general assembly, in our opinion, of having used a number of useless words. *If the word 'owner' was intended to mean the owner of the business, or the person conducting the hotel at the time of the fire only, then it was entirely unnecessary to name the owner or proprietor.*

" 'Moreover, the notice commanding such fire escapes to be placed upon the building is required by Sec. 3 to be given to "the owners, trustees, lessees, or occupants or either of them." The injunction being in the alternative, the notice may be given to the one as well as to the other, and therefore to the owner as well as to the lessee or occupant. We are therefore of the opinion that the appellees were not relieved from liability in regard to the placing of fire escapes upon their building because the fourth floor of the premises where appellant's intestate was at work at the time of his death was in possession and under the control of tenants of appellees, instead of being directly in the possession of appellees themselves.' [*Landgraf v. Kuh,* 188 Ill. 493, 59 N. E. 501.]"

In the foregoing case, it was also held that the circuit court erred in holding that the demurrer should have been sustained on the ground that the defendant owner had, prior to the passage of the act of 1901, leased the premises for a term of years, and that, at the time of the enactment of the law requiring the erection of fire escapes, the building was in the sole possession and control of the lessees, therefore the defendant had no right of entry or control over the building to construct and provide the fire escape. The court said:

"We think there is little merit in this assignment in the demurrer. It would have been no violation of the lessees' rights for the defendant to have entered upon the premises and erected the fire escapes which the law commanded both the owner and the tenant to erect. It would have been an act in obedience to a duty to society and the tenants' own guests and employees to protect them from injury by fire. This point is expressly ruled against the defendant in *White v. Thurber*, 55 Hun 447, 8 N. Y. Supp. 661, in which it was held that, 'where a landlord, upon the requirement and after notice from the department of buildings of the city of Brooklyn, entered upon demised premises for the purpose of making repairs required by such department, it is not a breach of the covenant and quiet enjoyment contained in the lease thereof.' No tenant would be heard in court of justice to complain that his landlord had performed an act to make the leased premises safe for the occupants of the building, which act the law also required of the tenant himself."

Appellant next contends that the court erred in declining to consider the whole building code as amended, by refusing to take judicial notice thereof, or to receive in evidence copies offered by appellant.

Respondent properly pleaded ordinance No. 31578 by its number, title, and date, therefore the court was required to take judicial notice of the ordinance and its

tenor and effect. *Peterson v. Pallis,* 103 Wash. 180, 173 Pac. 1021.

"In pleading an ordinance of a city or town in this state, it shall be sufficient to state the title of such ordinance and the date of its passage, whereupon the court shall take judicial knowledge of the existence of such ordinance, and the tenor and effect thereof." Rem. Comp. Stat., § 291.

Being required by the statute to take judicial notice of the ordinance, it was the duty of the court to pursue inquiries sufficient to make that knowledge real as far as possible.

"Judicial cognizance may extend to matters beyond the actual knowledge of the judge. But it is just as much an error for the court to mistake a fact of which it has taken cognizance as to mistake a principle of law. When the matter is a proper subject of judicial knowledge, the judge, in order to attain mental certainty, may require the assistance of the party who invoked his judicial knowledge; he may investigate the matter for himself, or he may pursue both courses. The scope, discretion and details of such investigation are entirely within the discretion and under the direction of the judge, uncontrolled by the rules of evidence or the wishes or suggestions of the parties. The judge may resort to or obtain information from any source of knowledge which he feels would be helpful to him, always seeking that which is most appropriate, including public official documents or records of all kinds. . . ." 23 C. J., p. 169, § 2001.

However, the court was not required to receive in evidence the unofficial, unauthenticated, so-called building code. That compilation was not admissible in evidence. The court could, had it seen fit to do so and was convinced that the compilation contained a correct copy of ordinance No. 31578, have resorted to that code for the purpose of making his judicial knowledge real.

■ The ordinance being within the judicial knowledge of the trial court, we will take judicial notice of the ordinance.

"The appellate court will take judicial notice of any fact that the court of original jurisdiction must judicially notice." *Spokane v. Griffith,* 49 Wash. 293, 95 Pac. 84.

"The rule is that an appellate court will notice judicially whatever the court of original jurisdiction is bound to notice judicially, . . ." *Tischner v. Rutledge,* 35 Wash. 285, 77 Pac. 388.

■ Appellant insists that judicial notice of the ordinance extends to amendments of the ordinance. Even so, we find no comfort therein for appellant. Section 103 of the ordinance as originally enacted provides:

"Nothing in the building code shall be construed as requiring that buildings heretofore constructed and equipped must be reconstructed, rearranged, altered, or otherwise equipped, unless it be by ordinance specifically so provided."

The ordinance in force and effect at the time of the fire and for many years prior thereto contains no such provision. Section 103 quoted above was repealed. The present § 103 provides that the ordinance shall not invalidate any permit "lawfully issued by the superintendent of buildings, provided said permit has not expired." The present ordinance makes it mandatory upon the appellant to install his building with sufficient fire escapes. If its building was erected prior to the repeal of § 103 quoted above, that was an affirmative defense to be pleaded and proved by the appellant. *Coffin v. Blackwell,* 116 Wash. 281, 199 Pac. 239, does not sustain the position of appellant that under § 103 it was not required to install its fire escapes, in the absence of a subsequent ordinance specifically requiring such installation. The erection of fire escapes

was necessary for the safeguarding of life, and appellant's building was not, therefore, exempted by § 103 from the requirements of §§ 601, 602 and 640 of the present ordinance. *Coffin v. Blackwell, supra,* presented the question whether the owner could be required to install an elevator in his building under an ordinance providing for such installation, in view of the fact that the building was constructed prior to the repeal of § 103, in the absence of an ordinance specifically requiring such installation. We said:

"Buildings in such condition are to be regarded as protected from mere executive interference by the building code, under § 103 and § 103 as amended, and § 9 of the fire hazard ordinance, 'unless such alterations or installation are manifestly necessary for the safeguarding of life and property, or are specifically required by ordinance subsequently passed by the city council.' As heretofore remarked, 'manifestly necessary' means an immediate and unmistakable necessity."

Neither did the court err in refusing to admit in evidence a copy of the lease. It could not have served any useful purpose. The appellant was not relieved of liability by the covenant of the lessee to make all repairs, etc.

Appellant also insists that it did not violate the ordinance; that the fire department made one inspection about eighteen months prior to the fire, and the second about thirty or forty days before the fire; that at the first inspection the fire department found open stairways, open light-wells in the hallways, storage in room 10 and a lock on the door, and a number of other small items; that on the second inspection room 10 was unoccupied and the lock had been taken from the door and other conditions were also remedied prior to the fire; that the fire department did not require that room 10 be removed.

That there was an insufficiency of means of escape in case of fire in violation of the city ordinance is apparent from the facts recited above. That the door to room 10 was obstructed is clear. The large man met with some kind of resistance that delayed his opening of the door for four minutes, and thereafter gained admission. That way to escape, the only way, the jury were warranted in believing, was obstructed.

That one or more city officials failed to perform their duty and require installation of another fire escape, or the removal of that room, does not relieve the appellant of liability for its violation of the ordinance.

The ordinance did not require notice from an inspector to the owner of the building to install fire escapes or provide other sufficient means of escape in case of fire. The owner knew, he is charged with knowledge, that the ordinance prescribed fire escapes and other means of egress. Notice from an inspector was not necessary to charge the appellant with the duty of placing fire escapes on its building under Ordinance No. 31578. In *Arms v. Ayer,* 192 Ill. 601, 61 N. E. 851, it was held, under a statute providing that within three months after passage of the act certain buildings should be provided with fire escapes, that, though one of the sections of the law provided that any person "who shall be required" to place fire escapes on his building shall obtain a permit, the requirement referred to the duty imposed by the statute itself, and not to any act of the inspector; and that notice from the inspector was not necessary to charge the owner with the duty of installing the fire escape.

The doctrine of assumption of risk is not applicable in this case. Though the respondent knew, or the knowledge be imputed to him, that the hotel lacked sufficient fire escapes, he will not be charged with

waiving the provisions of the ordinance requiring the owner to provide sufficient means of escape in case of fire. See 32 C. J., p. 564.

"The plaintiff did not waive the duty which the defendant owed to him under the ordinance as an occupant of the hotel, nor assume the risks incident to its occupation in its then condition. The duty of the defendant to place the fire escapes upon its hotel was not a contractual obligation, and the doctrine of assumed risks has no application to this case. The ordinance is a police regulation, made for the protection of human life, and in the interest of that portion of the public occupying hotels and lodging houses. Public policy requires that duties of this kind be discharged, and that all consequences of a failure to do so shall follow. The individuals who are affected cannot suspend the law by waiver or express contract. The plaintiff had the right to presume that the defendant would obey the law and would provide the fire escapes, and to continue to occupy his room upon the faith of such presumption.

"Contributory negligence of the injured party in producing the injuries sustained by him is another question, and, where it is the approximate cause of such injuries, constitutes a good defense." *Adams v. Cumberland Inn Co.,* 117 Tenn. 470, 101 S. W. 428.

"Neither are we impressed with the insistence of the defendant that the deceased, by becoming a lodger in this house and by remaining therein as such for more than six months, thereby waived compliance on defendant's part with our statutes and with the city ordinances. Such a defense seems very similar to that which is elsewhere in other jurisdictions called assumption of risk. Usually, if not universally, this doctrine is bottomed on contract express or implied, and connotes a relation of privity between him who invokes the doctrine and the one against whom it is invoked. We do not believe that a waiver of such compliance could ever arise against one injured or killed by default in complying with a plain statute. If waiver can be bottomed upon the fact of occupancy of a building which is not equipped, but which both an

ordinance and a statute require to be equipped, with fire safety appliances, from the mere fact of occupancy for a few hours, or days, or weeks or months, then the statute is emasculated and utterly worthless. This same defense has been urged in practically every case in every jurisdiction in which actions of this sort have been brought, but we have not been able to find one case in which the defense has been held to be absolutely good." *Burt v. Nichols,* 264 Mo. 1, 173 S. W. 681.

The cause was submitted to the jury under proper instructions. The court committed no error in refusing to give the instructions requested. Our examination of the record not disclosing substantial error, the judgment is affirmed.

TOLMAN, C. J., FULLERTON, BEELER, and BEALS, JJ., concur.