854

## PIG'N WHISTLE CORPORATION v. SCENIC PHOTO PUB. CO.

### No. 6565.

Circuit Court of Appeals, Ninth Circuit.

April 4, 1932.

Bogle, Bogle & Gates and McMicken, Ramsey, Rupp & Schweppe, all of Seattle, Wash. (W. H. Orrick, Orrick, Palmer & Dahlquist, and Ackerman; Wayland & Math- ews, all of San Francisco, Cal., of counsel), for appellant.

Hyland, Elvidge & Alvord, Fred G. Clarke, George W. Clarke, and Arthur C. Bannon, all of Seattle, Wash., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and McCORMICK, District Judge.

McCORMICK, District Judge.

This is an appeal from a judgment on a verdict of the jury in favor of the appellee, plaintiff in the court below, in an action for damages to its property caused by a fire in the Rialto building at Seattle, Wash. The complaint was based upon charges of negligence by appellant in three particulars: First, in the violation of certain hereinafter mentioned municipal ordinances of the city of Seattle relating to the maintenance and use of grease fume producing ranges and ducts therefrom in certain restaurant kitchens; second, in the violation of provisions of the written lease of the premises occupied by appellant in said building; and, third, in the manner of operation by appellant of its restaurant business in said building, whereby fire was allowed to come from the ranges in the kitchen of appellant to the injury and damage of appellee. It is conceded that appellant was not a party to the written lease of the premises occupied by it, and that therefore no liability in this case could attach by reason of the violation of any of the terms of said written lease. It thus appears that the judgment appealed from must be sustained, if at all, upon one or both of the other grounds of the complaint. The specifications of errors relate to claimed insufficiency of the evidence to justify the finding by the jury of negligence on the part of appellant, and asserted errors of the trial judge in giving and refusing certain instructions to the jury.

Appellant's counsel, however, admit in their briefs that if appellant did in fact violate the municipal ordinances invoked in this case it was guilty of negligence per se, and that if such violation was one of the proximate causes of, or contributed to, the damage or injury of appellee then it is liable; so that the decision of this appeal may be primarily reduced to a determination of the question as to whether or not the evidence in the record before us is sufficient to justify the finding implied by the general verdict, that appellant had negligently violated the applicable municipal ordinances of the city of Seattle to the injury and damage of appel-

lee. The following is an epitome of the pertinent and substantial facts germane to the appeal.

On May 24, 1929, the day of the fire, and for approximately ten years prior thereto, a portion of the ground floor of a two-story business block called the Rialto building had been under lease to the Pig'n Whistle Company of the Northwest, a Nevada corporation (for brevity hereinafter called the Nevada company), for a term of ten years commencing June 15, 1919. The building also had two balconies; one between the first and second stories, and another between the second story and an attic. This made a building of substantially four floors. The appellant (hereinafter referred to as the Delaware company), as successor of the aforesaid lessee, at the time of the fire was and had been occupying and carrying on a restaurant and confectionery business in the demised premises continuously from the time of its incorporation and commencement of business in Seattle in 1926. In the operation of the restaurant, both corporate entities used kitchen ranges upon which they cooked for more than thirty persons each day. At the time of the fire the ranges were twenty-two feet long.

Appellee was also a tenant of the Rialto building occupying space in an upper floor, where at the time of the fire it was operating a scenic photographing publishing company. There were several other tenants in the building on the day of the fire.

Some time prior to the commencement of the tenancy of the Nevada company, there was constructed in the building a vertical ventilating shaft which ran through the building from a basement to the roof, the outside brick wall of the building being also a wall of the shaft, and the other three walls of the shaft being made of wood partly covered with metal lath and plaster and partly lined inside with sheet metal. This shaft was constructed and intended solely as an air ventilating duct. The wooden floor joists of the building extended unprotected through the ventilating shaft at each floor. As originally built, and until June, 1920, no part of the ventilating shaft entered or passed through the premises later occupied by appellant, but at all times prior to that date this air duct terminated not closer than twelve inches from the wall separating the premises occupied by appellant from adjoining premises occupied by others on the same floor of the building. During the month of May, 1920, one Ridean, the manager of the restaurant for the Nevada com-

pany, who remained with the Delaware company in a managerial capacity from its organization until 1927, connected the ventilating shaft to the restaurant by extending a horizontal pipe from appellant's kitchen to the open end of a horizontal duct in the adjoining premises that connected with the vertical ventilating shaft, thereby improving the air circulation in the kitchen. This newly made extension of the ventilating shaft passed within five inches of one end of the hood that covered the ranges in the kitchen. Although this extension was made without obtaining a permit from the city authorities, no claim of liability in this case is made by reason of such unauthorized construction. However, a few days later, according to the evidence, this extension of the ventilating shaft was, with the acquiescence of Ridean, notwithstanding his testimony to the contrary, connected to the hood over the ranges in the kitchen by cutting a hole in the extension pipe and a like hole in the hood and connecting the two with a metallic duct two feet in diameter. This connection was made for the purpose of carrying away the grease laden fumes from the ranges, and it entered the horizontal pipe which was connected with the original vertical ventilating shaft that ran through all floors of the building and out above the roof. Prior to the extension of this short duct from the hood over the ranges, proper and lawful means had been provided at the other end of the hood for carrying away the grease fumes through masonry grease ducts, but this instrumentality was considered insufficient. Consequently, the two-foot extension into the air ventilating shaft was made to increase and accelerate the removal of grease laden fumes from the ranges and from the kitchen. This additional extension and connection was also made without permit from the fire authorities of the city of Seattle, and is admitted to have been constructed by the Nevada company in violation of city ordinances of Seattle regulating the construction of grease ducts over ranges in kitchens of restaurants of the kind conducted by appellant and its predecessor. This connection and duct was used from its installation in May, 1920, to the day of the fire, May 24, 1929; the Nevada company having utilized it until the appellant succeeded to the restaurant business in 1926, since which time the Delaware company, appellant herein, continuously used it to the day of the fire. It was noticeable from the under side of the hood, and could be seen by one looking upward into the hood. During a period of approximately three years while ap-

pellant was daily using this connection, it made no inspection of the duct, and it did nothing during that entire period to ascertain the presence or condition of this dangerous instrumentality.

On account of the accumulation of grease in the duct, and throughout the inflammable air ventilating shaft to which it was connected, flames or heat from the ranges in the kitchen of appellant, on May 24, 1929, caused a fire in the shaft that spread through the entire Rialto building and destroyed property of the appellee in the premises occupied by it.

The terms of the municipal ordinances and sections of the so called Building Code of the city of Seattle, that are in the record before us and that are applicable to this case, are as follows:

## Ordinance No. 45633.

"Section 102. The Building Code shall apply to construction, occupancy, use, maintenance * * * of all buildings, * * * fire escapes, * * * either in or upon a building, * * * chimneys and similar structures. It shall apply equally to both public and private property and shall be binding upon all owners, lessees, agents, * * * and other persons having charge of the construction, occupancy, use, maintenance, * * * of the structures or equipment to which this Code applies."

"Section 106. It shall be unlawful for any person to construct, alter, repair, * * * any building or other structure or equipment regulated herein until a permit therefor has been obtained from the Superintendent of Buildings and until a permit placard furnished for said purpose by the Superintendent of Buildings has been posted in a conspicuous place upon said premises.

"It shall be unlawful for any person to construct, alter, repair, * * * any building or other structure, or any equipment regulated herein, or to use or occupy any structure except in accordance with the provisions of this ordinance."

"Section 116. * * * It shall be the duty of the Fire Marshal to notify every owner or lessee who is using, or causing to be used, any lot or building or other structure for any purpose when the use thereof constitutes a violation of any of the provisions of the Building Code, and it shall be unlawful to continue to so use said lot or building or other structure after having been notified by the Fire Marshal. The Fire Marshal may cause any unlawfully occupied structure or lot to be immediately vacated by notifying the owner thereof, or lessee, in writing or by posting a notice on the property * * * ."

"Section 550: All cooking devices such as stoves, ranges, gas or electric plates which are used to cook for thirty (30) or more persons during a period of 24 hours, and which are likely to produce grease fumes, shall be provided with a metal hood extending over the entire surface used for cooking.

"The hood shall be constructed of sheet metal not lighter than No. 22 gauge fastened to a rigid metal frame and shall have its sides extend to within seven (7) feet or less of the floor. The top and sides shall be kept at least twelve (12) inches from any plastered wood work and eighteen (18) inches from any unplastered wood work. The hood shall be connected by a ventilating duct to a masonry chimney or to a metal duct outside the building provided no smoke flue shall enter either. The metal ventilating duct shall be constructed of galvanized sheet metal not lighter than No. 22 gauge if its cross-sectional area does not exceed 260 square inches and of galvanized sheet metal not lighter than No. 20 gauge if the cross-sectional area exceeds 260 square yards. They shall have grooved seams or be lapped one and one-half (1½) inches and riveted with two (2) rows of rivets staggered two (2) inches or less apart.

"The different sections of the duct shall be fastened together with rivets spaced not farther apart than two (2) inches or they shall be riveted to one by one by one and one-eighths (1x1x1⅛) inch angles with rivets not farther apart than two (2) inches and the angles on the connecting ends of sections shall be fastened together with one-fourth (¼) inch bolts not farther apart than two (2) inches. The duct shall be kept at least twelve (12) inches from any plastered wood work and at least eighteen (18) inches from any unplastered wood work. No such ducts shall pass through any floor or ceiling nor through any wall or partition separating two (2) tenants nor through any frame exterior wall. * * * When supported on the exterior walls of a masonry building, ducts shall be fastened to the wall every ten (10) feet or closer, by metal bands not lighter than one-quarter by one and one-half (¼x1½) inch, which in turn shall be fastened to the masonry with expansion bolts not smaller than one-half by four (½x4) inches, and shields. All such ducts shall extend to a height three (3) feet above the parapet wall of any building within twelve (12) feet;

provided, however, that they need not extend more than three (3) feet above the parapet of the walls to which it is fastened, if the occupancy of the construction of the buildings within twelve (12) feet of the duct is such that the fumes in no way can become a nuisance to the occupants of the adjacent buildings.

"Ventilating ducts from cooking devices shall have a hood over the top so as to prevent rain falling into the pipe.

"All such ducts shall be provided with tightly fitting doors located at each angle in the pipe and at other necessary locations in order that they may be thoroughly cleaned, or they shall be constructed in removable sections as mentioned above in order that they may be removed and cleaned. * * * "

It is indisputable that appellant, in using the grease duct that connected the hood over its ranges with the vertical inflammable ventilating shaft, violated the requirements of sections 102, 106, and 550 of the aforesaid ordinance of the city. Instead of being connected to a masonry chimney or to a metal duct outside of the building, the hood over the ranges was joined by a metallic pipe to a partly wooden inflammable air shaft that was inside of the building and that passed through floors and ceilings as well as through a wall or partition that separated the Pig'n Whistle premises from those of another tenant in the building, and in this manner the cooking devices of appellant were used daily for nearly three years. Moreover, the grease duct so used by appellant had no doors in the pipe or elsewhere, and contained no facilities for cleaning it, as required by the ordinances.

The rule has been repeatedly stated by the Supreme Court of Washington that the violation of a municipal ordinance within the state of Washington is the violation of a positive law, as well as of a duty imposed by law, and constitutes negligence in itself. See, Price v. Gabel, 162 Wash. 275, 298 P. 444; Moore v. Dresden Investment Co., 162 Wash. 289, 298 P. 465.

The use of the vertical ventilating shaft as a grease fume duct from the ranges was also the proximate cause of the damage to appellee's property. The instrumentality in and of itself, while built contrary to the ordinances, would have caused no damage on the day of the fire if it had not been carelessly used in connection with the heat in the appellant's ranges. The original wrongful construction of the grease duct only became injurious in consequence of the intervention of a wrongful and illegal use of it by the appellant, and in such a situation the injury resulting is attributable to the last wrong as the proximate cause.

Appellant contends, however, that, irrespective of all other considerations, it is exonerated from liability in this case under the terms of section 116 of Ordinance No. 45633, hereinabove quoted. The particularization of this claim is that no responsibility to appellee can attach to appellant by reason of its use of the grease duct for a period of about three years, because the fire marshal had not notified appellant during that period that its use of the illegal instrumentality or structure violated the Building Code of Seattle. This contention is untenable.

We are concerned in this case solely with the remedial aspect of the municipal ordinances under consideration as they regulate and affect the respective rights and duties of the parties to this action as tenants and occupants of the Rialto building at the time of the fire. Section 550 of the Building Code expressly requires that grease ducts from ranges like those in use by appellant shall be kept at least 12 inches from any plastered woodwork and at least 18 inches from any unplastered woodwork, and that no such grease duct shall pass through any floor or ceiling or through any wall or partition separating two tenants, or through any frame exterior wall. These are positive, clear, and unconditional requirements that imposed a duty upon the appellant. It did not require any notice from the fire marshal to inform and apprise the Pig'n Whistle Corporation that the grease duct it was constantly using in its kitchen did not meet the requirements of section 550. Appellant being charged with knowledge of the ordinance, the only purpose or function that the notice from the fire marshal could perform would be to acquaint appellant, who was using the grease duct, that it was not in conformity to the requirements of section 550. This the appellant, as a reasonably prudent person, using the duct for nearly three years, already knew, or should have known, as the jury found. It would have been an idle and useless act to notify appellant of what was visible to any one looking. The law does not require such an act.

In the recent case of Moore v. Dresden Investment Co., supra, 162 Wash. 289, 298 P. 465, 473, the Supreme Court of Washington, in an action for damages caused by a fire, considered the scope and effect of another ordinance of Seattle that required the instal-

lation of certain fire escapes on buildings, and in the course of the opinion said: "That one or more city officials failed to perform their duty and require installation of another fire escape or the removal of that room does not relieve the appellant of liability for its violation of the ordinance."

And the court observed further: "The ordinance did not require notice from an inspector to the owner of the building to install fire escapes or provide other sufficient means of escape in case of fire. The owner knew, he is charged with knowledge, that the ordinance prescribed fire escapes and other means of egress. Notice from an inspector was not necessary to charge the appellant with the duty of placing fire escapes on its building under Ordinance No. 31578."

We consider this language of the Washington Supreme Court applicable to the ordinance under consideration in this case. See, also, Willy v. Mulledy, 78 N. Y. 310, 34 Am. Rep. 536.

■ Two further assignments of error merit consideration. It is claimed that the court erred in giving the following instruction to the jury: "One coming into possession and use of defective or unsafe lands or instrumentalities, one who has not erected them or constructed them but comes into use of them later, into possession, as the plaintiff contends the defendant did here now in the evidence, one who thus comes into possession and use of defective instrumentalities or structures or land owes a duty to exercise reasonable care to ascertain and remedy the defect and make them reasonably safe and if he fails to do so after his possession and use has continued long enough to enable him to perform that duty he is negligent and liable for the proximate consequences or damages due to the defect or the unsafety."

The language is but the statement of an abstract principle of law. It is an excerpt from the oral charge given by the trial judge to the jury at the conclusion of the evidence, and to be fully understood and properly considered as having any application to the case at bar it should be construed with the portions of the charge that immediately precede and follow it as well as with the oral charge in its entirety. The preceding portion of the charge on the phase of the case that the court was discussing reads: "The court instructs you that if it be a fact that the defendant was not aware of the ordinance of the city of Seattle it is no excuse for failure and no defense in this case. Every man is charged with notice of all the laws of the land wherein he is domiciled, including city ordinances, which are laws. The defendant is charged with knowledge of and with responsibility for its violation, but in this case, provided the defendant had so long operated the restaurant, if it did at all—as I will tell you later—before and at the time of the fire, that a reasonably prudent man, exercising reasonable diligence and care, should know the disposition of its grease fumes, by him created, and whether in conformity to or violation of the city ordinance, could have known the condition of the air and connecting grease ducts."

And the excerpt complained of was followed by these words of the trial judge: "There has been argument to you, at least, and some evidence that the failure of the officers of the city to perform their duty may exculpate the defendant. Not at all. The officers of the city are charged with certain duties to investigate, the fire marshal in particular, buildings, and ascertain if they comply with the ordinances, and if not to give notice to the defendant, or to the owner, the occupant, the user. But the court instructs you that when an ordinance exists no officer is permitted to exculpate or acquit anyone of noncompliance with it, and whether the officer performs his duty or not, in so far as a civil action—and this action—is concerned, whether or not the marshal gave notice to the defendant or not, if the defendant used and operated this air duct for its grease fumes with knowledge, as I have explained to you, the mere fact that it received no notice from the fire marshal would not permit it to escape liability."

When all of the instruction is considered, we find no error in it.

Appellant also complains of the giving of the following instructions in the oral charge of the court:

"The second question is, was the defendant in control of operations of the restaurant at the time of and before the fire for a sufficient time that by reasonable diligence it could have discovered that it was discharging its grease fumes into the vertical air duct in evidence before you. The air duct was contrary to the ordinance, and is negligence, providing you find as I have indicated to you. So the question is, Was the defendant in control of operations of the restaurant at the time of and before the fire for sufficient time that by reasonable diligence it could have discovered that it was discharging its grease fumes into the vertical air duct?

"Grease fumes are created on the premises by whoever was operating them. They are dangerous unless they are properly taken

care of, and that is why the ordinance provides a particular kind of grease duct, and anyone who has charge of a dangerous agency of that sort, which he discharges at large, is under an obligation and duty to society to see, so far as reasonable care will enable him to, that he complies with the ordinances and does no unnecessary damage to his neighbors.

"And when I say to you 'time enough so that by reasonable diligence,' again, you will measure what is reasonable diligence by the amount of danger involved by failure to be diligent.

"If you answer that 'Yes' then you come to the next question, and if you answer it 'No,' why, of course that would end the case. If the defendant was not there in operation of the restaurant long enough so that by reasonable diligence it would know what it was doing with its fumes, it is not liable in the case. But if you answer that 'Yes,' then you come to the last question, and that is simply what is the amount of the plaintiff's damage, due to the fire and water. That would be the amount it would be entitled to recover."

By these instructions and throughout the charge of the court it was correctly made plain to the jury that, before it could fix liability upon appellant, it must have been shown by the evidence that appellant knew, or in the exercise of reasonable diligence and prudence should have known, that the ventilating shaft was functioning as a grease duct, and, as such, was forbidden by and contrary to the ordinance of the city of Seattle.

It is unnecessary to discuss at any length the remaining assignments of errors mentioned in appellant's briefs. They all relate to the refusal of the court to give certain instructions requested by appellant. It is sufficient to state that we have examined the entire oral charge, and, in so far as the refused instructions were proper, we find that they were substantially covered by the charge given by the court.

No prejudicial error being shown, the judgment is affirmed.