[Civ. No. 20664.   Second Dist., Div. Three.   May 4, 1955.]

MARGUERITE C. STANFORD, Appellant, v. BAILEY INCORPORATED (a Corporation) et al., Respondents.

Larwill & Wolfe and Charles W. Wolfe for Appellant.

Crider, Tilson & Ruppé and Donald E. Ruppé, Moss, Lyon & Dunn, Gerold C. Dunn and Henry F. Walker for Respondents.

VALLÉE, J.—Appeal by plaintiff from an adverse judgment entered on a jury verdict in an action for damages for personal injuries.

Defendant Lyon was the owner and lessor of a building in Pasadena. Defendant Bailey was the lessee of the building and operated a café or restaurant therein. The entrance doorway to the café was set back 43 inches from the sidewalk paralleling the front of the building. A concrete ramp extended from the sidewalk to the entrance door. The ramp was constructed of nonroughened concrete and had no nonslip material on it. The ramp was in a recess, i. e., there were walls on each side of the ramp. It had a slope of 6½ inches from the door to the sidewalk. The slope exceeded one in eight and was about one in six and a half; it constituted a grade of about 15 per cent. There was a canopy over the sidewalk that went up to the building over the ramp. The doorway was the only means of entrance into the café for patrons.

About 7:15 p. m. on January 12, 1952, plaintiff, accompanied by her husband and intending to purchase dinner, attempted to enter the café. It was dark and raining. It had been raining for several days. Plaintiff preceded her

husband up the ramp. The light was such that she could see the door and its handle. Standing on the ramp she attempted to open the door, which opened outward, by pulling it toward her. The door seemed to be stuck. She pulled on the knob two or three times. On the second or third pull, the door suddenly came open and struck her shoulder, knocking her off balance. Her feet slipped on the ramp and she fell prone on it, striking her head on the side of the building. There was no foreign substance on plaintiff's shoes or on the ramp. Plaintiff testified that she was hurrying and anxious to get in; the ramp was wet from the rain; the soles of her shoes were wet and her feet slipped on the ramp; she did not slip when she walked up the ramp but slipped only when she pulled the door into her shoulder; she was injured.

Plaintiff's husband testified the only light that showed at the time plaintiff fell came from a small glass window in the door of the café and a dim, green illumination over the top of the door. He also testified: On February 1, 1953, he went to the café with a light meter; about 7 p. m. he stood on the ramp; the night was dark; the lights and lighting facilities were the same as on the night plaintiff was injured; he held the light meter at the level of the handle of the door; at that point the meter registered about .75-foot candles; there was less light on the ramp than at the place where he held the meter. There was other testimony to the same effect.

A construction engineer called by defendants testified he made a series of sliding friction tests of the ramp when wet and when dry and of the sidewalk adjoining the ramp; the coefficient of friction was the same whether wet or dry; it was .36 on the ramp and on the sidewalk; this means that the traction a person would have in walking on the ramp or on the sidewalk would be the same.

Plaintiff offered in evidence a part of Pasadena Ordinance 4123, adopted December 27, 1949, effective January 30, 1950, and in effect at the time of the accident, which read:

"Section 1. (a) Except as otherwise herein provided the minimum standards, provisions and requirements for safe and stable design, methods of construction and quality of materials, use and occupancy, location and maintenance of all buildings or structures within the city shall be in accordance with the provisions and in the manner prescribed by the Uniform Building Code, 1949 edition, adopted by the Pacific Coast Building Officials Conference. . . ."

She also offered in evidence parts of said "Uniform Building Code."[1]  Defendants objected to reception of the parts of the ordinance and the parts of the building code on various grounds.  Without waiving their objections, for the sole purpose of enabling the court to pass on the objections, defendants

---

[1] The parts of the "Uniform Building Code" offered in evidence read:

Section 102, part I, chapter 1:

"The purpose of this Code is to provide minimum standards to safeguard life or limb, health, property, and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures within the city and certain equipment specifically regulated herein."

Part III, chapter 5, section 501:

"Sec. 501. Every building, whether existing or hereafter erected, shall be classified by the Building Official according to its use or the character of its occupancy, as a building of Group A, B, C, D, E, F, G, H, I or J, as defined in Chapters 6, 7, 8 9, 10, 11, 12, 13, 14 and 15 respectively. (See Table No. 5-A):"

A portion of part III, chapter 11 reading as follows:

"Chapter 11—Requirements for Group F Occupancies."

Part III, chapter 11, section 1101 providing in part as follows:

"Sec. 1101. Group F occupancies shall be:

"Division 1. Wholesale and retail stores, office buildings, restaurants, . . ."

Part III, chapter 11, section 1104 provides as follows:

"Sec. 1104. Stairs, exits, and smokeproof enclosures shall be provided as specified in Chapter 33."

Chapter 33, section 3301:

"Sec. 3301. (a) *Purpose.* The purpose of this Chapter is to provide minimum standards of egress facilities for occupants of buildings;"

Chapter 33, section 3306, providing in part as follows:

"Sec. 3306 (a) *General.* A ramp conforming to the requirements of this Section may be used as an exit. Aisles need not conform to this Section. . . .

"(c) *Slope.* The slope of a ramp shall not exceed one in eight.

"(d) *Handrails.* A ramp with slope exceeding one in ten shall have handrails as required for stairways. . . .

"(f) *Surface.* The surface of ramps shall be roughened or shall be of non-slip material."

Chapter 33, that part of section 3305(g) being as follows:

"Sec. 3305(g) *Handrails.* Stairways shall have handrails on each side, and every stairway more than eighty-eight inches (88″) in width shall have intermediate handrails dividing the stairway into portions not more than sixty-six inches (66″) in width."

Chapter 33, section 3312:

"Sec. 3312. (a) *Exit Illumination.* Exits shall be illuminated at all times with light having an intensity of not less than one foot candle at floor level, . . ."

Part of chapter 4, section 401(e):

"Exit is a continuous and unobstructed means of egress to a public way, and shall include intervening doorways, corridors, ramps, . . ."

offered in evidence other parts of the building code.[2] The objections were sustained.

Plaintiff's ground for reversal is that the court erred prejudicially in not admitting the offered part of the ordinance and the parts of the Uniform Building Code in evidence. She argues that the ordinance applies to pre-existing buildings and that the evidence showed that the ramp and doorway were not constructed in accord with its requirements. Defendants reply that the ordinance does not apply to pre-existing buildings; it pertains to exits and not to entrances; and plaintiff failed to show that any violation of the ordinance was a proximate cause of injury. Defendant lessor also says that an injured invitee seeking recovery against a lessor must plead and prove his claim to be within some exception to the rule of nonliability of a lessor and that plaintiff failed to do so. There was evidence from which the jury could have concluded that the ramp and doorway were not constructed as required by the ordinance.

█ It is the rule under the general law that a lessor is not liable for injuries to the invitees of a lessee caused by defects in the leased premises. █ The rule is subject to the exception that if there is some hidden defect in or danger on the premises, which is known to the lessor at the time of executing the lease but which is not apparent to the prospective lessee, the lessor is obligated to inform the lessee thereof; and failing to do so, the lessor renders himself liable for injuries sustained by the lessee resulting from such hidden defects. And in such case the lessor is liable to invitees of the lessee to the same extent that he would have been had the lessee been injured. Stated differently, the lessor's liability in such a case is no greater to the invitee of the lessee

---

[2]The parts of the Uniform Building Code offered by defendants read:

"Sec. 103. New buildings and structures hereafter erected in the city, and buildings and structures moved into or within the city shall conform to the requirements of this Code.

"Additions, alterations, repairs and changes of use or occupancy in all buildings and structures shall comply with the provisions for new buildings and structures, except as otherwise provided in Sections 104, 306 and 502 of this Code.

"Sec. 104. (a) GENERAL. Buildings or structures to which additions, alterations or repairs are made shall comply with all the requirements for new buildings or structures, except as specifically provided in this section."

Section 103 is titled "Scope." Section 104 is titled "Application to Existing Buildings."

Section 402 defined "Building Existing" as "a building erected prior to the adoption of this Code, or one for which a legal building permit has been issued."

than it would be to the tenant himself. (*Neuber* v. *Royal Realty Co.*, 86 Cal.App.2d 596, 610 [195 P.2d 501].) It does not follow that because under general law a lessor is not liable for injuries to invitees of a tenant caused by defects in the leased premises, unless the facts described appear, a landlord may not be liable by reason of additional or supplementary regulations.

"A municipality, under the power delegated to it by the state, may enact ordinances creating duties for the protection of persons and property, and it is very generally held that those who violate such ordinances are liable for resulting injury to others. The standard of conduct of a reasonable man may be established by a statute or ordinance. The violation of such a legislative enactment may be negligence in itself if the plaintiff is one of a class of persons whom the statute was intended to protect and the harm which has occurred is of the type which it was intended to prevent." (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 416 [218 P.2d 17].)

■ If the ordinance imposed a duty on Lyon, the lessor, a breach of that duty is a violation of the ordinance and negligence *per se*. In such a case a lessor incurs independent liability for injuries suffered by persons lawfully on the premises, including invitees of a tenant, proximately caused by such negligence, in the absence of some established defense. The lessor in such case is held liable for his own illegal act or omission and not for the act or omission of the lessee. ■ There is no immunity from the duty imposed on the lessor by the fact that he is not an occupant. ■ Common-law standards of duty, applicable to the ordinary relationship of a lessor on the one hand and a lessee and his invitees on the other, are not relevant to the determination of negligence in a case of injury to the lessee's invitee which has resulted from the lessor's breach of a statutory duty.[3]

[3]See *Roxas* v. *Gogna*, 41 Cal.App.2d 234, 241 [106 P.2d 227]; *Harmon* v. *M. H. Sherman Co.*, 29 Cal.App.2d 580, 586-587 [85 P.2d 205]; *Goetz* v. *Duffy*, 215 N.Y. 53 [109 N.E. 113, 114]; *Pollard* v. *Trivia Bldg. Corp.*, 291 N.Y. 19 [50 N.E.2d 287, 290]; *Tralle* v. *Hartman Furniture & Carpet Co.*, 116 Neb. 418 [217 N.W. 952, 955]; *Burt* v. *Nichols*, 264 Mo. 1 [173 S.W. 681, 684, L.R.A. 1917E 250]; *Moore* v. *Dresden Inv. Co.*, 162 Wash. 289 [298 P. 465, 467-473, 77 A.L.R. 1258]; *Landgraf* v. *Kuh*, 188 Ill. 484 [59 N.E. 501, 503]; *Annis* v. *Britton*, 232 Mich. 291 [205 N.W. 128, 129]; *Klein* v. *Young*, 163 La. 59 [111 So. 495, 499]; 4 R.C.L. 405, § 11; anno.: 77 A.L.R. 1273. *Cf. Bevan* v. *Century Realty Co.*, 64 Ohio App. 58 [27 N.E.2d 777]; *Singer* v. *Eastern Columbia, Inc.*, 72 Cal.App.2d 402, 410-412 [164 P.2d 531]; *Scholey* v. *Steele*, 59 Cal.App.2d 402, 405 [138 P.2d 733].

Plaintiff's contention is predicated on the assumption that the ramp and doorway into the café were constructed and maintained in violation of the Pasadena ordinance. There was no evidence as to when the ramp or the doorway was constructed. There was no evidence that the ordinance was in effect at the time the ramp or the doorway was constructed. Since plaintiff failed to prove that the ordinance was enacted prior to construction of the ramp or the doorway, it must be assumed that it was enacted subsequent thereto. The query therefore is: Does the ordinance apply to buildings existing at the time of its enactment?

■ An ordinance is not to be given a retroactive effect unless such intention clearly appears. It is to be construed according to the intention of the legislative body enacting it; and in ascertaining that intention, the courts must presume a prospective and not a retroactive operation was intended, unless such presumption is negatived by express language. (*Tevis* v. *City & County of San Francisco,* 43 Cal.2d 190, 195 [272 P.2d 757]; *Biscay* v. *City of Burlingame,* 127 Cal. App. 213, 220 [15 P.2d 784]; *London* v. *Robinson,* 94 Cal. App. 774, 776-777 [271 P. 921].) ■ We are of the opinion that the Pasadena ordinance does not apply to a building in existence on the date of its enactment unless additions, alterations, or repairs are made to the building. The scope of the ordinance is expressly stated therein. Section 103 is titled "Scope." It reads:

"New buildings and structures hereafter erected in the city, and buildings and structures moved into or within the city shall conform to the requirements of this Code.

"Additions, alterations, repairs and changes of use or occupancy in all buildings and structures shall comply with the provisions for new buildings and structures, except as otherwise provided in Sections 104, 306 and 502 of this Code."

It is not claimed that the building in question came within any exception. Section 104 is titled "Application to Existing Buildings." It reads:

"(a) GENERAL. Buildings or structures to which additions, alterations or repairs are made shall comply with all the requirements for new buildings or structures, except as specifically provided in this section."

Section 402 defines "Building Existing" as "a building erected prior to the adoption of this Code, or one for which a legal building permit has been issued." ■ It seems manifest that the ordinance applies to new buildings and

structures, and to additions, alterations, and repairs, and not otherwise, to pre-existing buildings. (See *Lee* v. *Dawson*, 44 Cal.App.2d 362, 367 [112 P.2d 683].) In *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409 [218 P.2d 17], relied on by plaintiff, the ordinance by its express terms was applicable to existing structures.

Since plaintiff failed to prove that the ramp and the doorway were constructed in violation of the particular provisions of the ordinance on which he relies, the court did not err in sustaining defendants' objection to reception in evidence of the parts of the Pasadena ordinance and the parts of the "Uniform Building Code" offered by plaintiff. As this is the only point urged by plaintiff, the judgment must be affirmed.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.