Filed 2/27/26

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| 360 SO REEVES, LLC, | ) | 24APLC00389 |
| Plaintiff and Respondent, | ) | Santa Monica Trial Court |
| v. | ) | No. 24SMUD00990 |
| JEFF DUTTON, | ) | |
| Defendant and Appellant. | ) | **OPINION** |

APPEALS from a judgment and orders of the Superior Court of Los Angeles County, George F. Bird, Judge.  Affirmed in part and dismissed in part.

Law Offices of Ben Gharagozli, Ben Gharagozli for Defendant and Appellant.

JZ LAW GROUP, P.C., Jacob Zadeh for Plaintiff and Respondent.

\*     \*     \*

Following a court trial in a residential unlawful detainer action for non-payment of rent, Jeff Dutton (defendant) appeals the judgment entered in favor of 360 So Reeves, LLC (plaintiff) and from the denial of his post-judgment motions for new trial and to set aside the judgment. Defendant seeks reversal on two grounds. First, the three-day notice was defective by including late fees and overstating the rent due. Second, it was plaintiff's burden to prove, as a component of its prima facie case, that it complied with the notice obligations in Civil Code section 1962.[1] We publish this opinion to clarify that a lessor's noncompliance with section 1962 is an affirmative defense for which the lessee bears the burden of proof.[2] Because defendant did not prove that plaintiff failed to comply with the statute, we affirm the judgment and the appealable post-judgment order.

BACKGROUND

In a first amended complaint filed on May 21, 2024, plaintiff sought possession of a residential unit occupied by defendant in the City of Beverly Hills. The complaint alleged that on December 9, 2013, defendant became a tenant of the unit pursuant to a written lease agreement made with plaintiff's agent. Defendant's initial rent was $1,595 payable on the first day of each month, and the rent was subsequently increased to $1,831. On April 12, 2024, defendant was served by a registered process server with a three-day notice demanding that he pay past-due rent of $7,236—accounting for the period between June 2023 and April 2024—or relinquish possession of the premises. Defendant failed to pay the past-due rent or quit possession after the notice period expired.

Defendant's answer denied each allegation in the complaint and asserted affirmative defenses, including that the three-day notice was void by overstating the rent due, and that plaintiff failed to comply with the disclosure requirements in section 1962.

After the court denied defendant's motion for summary judgment, the action was tried without a jury on September 25, 2024. Plaintiff's case consisted of three exhibits (the lease,

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] See California Rules of Court, rule 8.1105(b), (c)(3)-(4).)

three-day notice, and proof of service of the notice), in addition to the testimony of Joublin Manoochehri and defendant, who was called pursuant to Evidence Code section 776. Defendant was the only defense witness.

In 2013, when defendant signed the lease agreement, the property was owned by Edith Newman and managed by K & B Property Management. JNM Realty took over as the property manager at least five years before the trial. Manoochehri is the assigned property manager. Newman died a few years before the trial and her children inherited ownership of the property. In 2023, ownership of the property was transferred to plaintiff, an LLC. Manoochehri confirmed that a written notice of change of ownership "was given" to defendant "within the last 12 months," "towards the end of 2023," but he did not bring the notice to court. The notice was posted on defendant's door and in the common area of the complex near the mailboxes, and it was separately mailed to defendant. According to Manoochehri, the document contained "all the information pertaining to the new ownership" and "anything else I [*sic*] needed to know . . . where to pay rent and everything like that." Manoochehri could not recall whether the notice contained any information other than notification of the change of ownership and where to pay rent. Manoochehri believed he also called defendant to notify him of the changes.

Manoochehri testified that defendant accumulated a minimum of $7,236 in past-due rent between June 2023 and April 2024, as reflected in the rent ledger.[3] He reviewed the three-day notice prepared by plaintiff's counsel and confirmed the information on the notice was accurate. The rent ledger reflected defendant was charged $50 late fees multiple times during his tenancy, but the statement of rent due in the three-day notice did not include late fees. Defendant failed to pay the rent owed or quit possession of the premises after the three-day notice period expired.

In his testimony, defendant did not dispute that his monthly rent was $1,831 or that he received a copy of the three-day notice to pay rent or quit. When asked if he attempted to pay the rent owed, defendant replied, "I believe I mailed a check or communicated with the office at

---

[3] A rent ledger in the clerk's transcript was attached to a pretrial pleading but was not introduced as an exhibit at trial.

that time to make an arrangement to get caught up." According to defendant, his partial rent check was "mailed back to [him]" after service of the three-day notice. Defendant did not have the returned check with him, and he could not recall the dollar amount of the check. He has only paid rent by check.

Defendant was aware that JNM Realty was the property manager, but he was unsure of the office address for the manager, and he only knew the phone number to report maintenance issues. Prior to the initiation of the unlawful detainer, defendant was not aware that plaintiff was the new owner of the property; however, he admitted his rent checks were made out to plaintiff. Defendant received a change in ownership document from plaintiff[4] which "stated the new owner, [and] where to mail the rent check." When asked if the document identified the agent for service of process defendant replied, "[n]o, I don't believe so." No other change of ownership document was provided to him.

The parties proceeded to make closing arguments. Plaintiff maintained it proved each element of its prima facie case—that defendant was served with a valid three-day notice to pay rent of $7,236 or quit the premises, and that defendant failed to pay the rent owed or relinquish possession of the premises and thereafter continued in possession. Defendant argued the notice was defective because it overstated the amount of rent due by including late fees in its calculation. Additionally, relying on *Group XIII Properties LP v. Stockman* (2022) 85 Cal.App.5th Supp. 1 (*Group XIII*), defendant argued that section 1962 is "a jurisdictional requirement[,] so it is not an affirmative defense," and that plaintiff failed to satisfy the requirements in section 1962. In response, plaintiff argued it was defendant's burden to prove the affirmative defense under section 1962, and he failed to satisfy this standard.

The trial court agreed with defendant that section 1962 was "a jurisdictional issue" and not an affirmative defense. However, the court found that plaintiff satisfactorily proved each

---

[4] The clerk's transcript contains a November 28, 2023-dated letter which informed the tenants that all future rent checks were to be made out to plaintiff and included the office phone number for management. This document was attached to plaintiff's opposition to defendant's motion for summary judgment, but it was not introduced into evidence at trial.

element of its case in chief, that defendant failed to demonstrate the rent demand in the three-day notice was overstated, and that "plaintiff testified that they complied with [section 1962], and the defendant didn't produce any evidence to the contrary." Judgment was entered in favor of plaintiff and against defendant for possession of the premises, $7,236 in unpaid rent, damages of $9,825.83, costs, and unspecified attorney fees.[5]

## DISCUSSION

<u>Overstatement of rent</u>

Defendant claims the rent demanded in the three-day notice was overstated in that it wrongly included "illegal late fee[s]," making the notice defective and requiring reversal of the judgment. It is defendant's position that the legal adequacy of the notice is a pure question of law reviewed de novo. Plaintiff counters that we review the judgment for substantial evidence. Neither party has articulated the correct standard of review applicable to this case.

"'""In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment . . . ."'" [Citation.] Instead, '"the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law"' because '"the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"'" (*Lent v. California Coastal Com.* (2021) 62 Cal.App.5th 812, 837.) This court does not reweigh conflicts in the evidence or reassess the credibility of the witnesses—tasks that are the province

---

[5] Defendant filed timely motions seeking a new trial and to set aside and/or vacate the judgment. The court denied both motions. Defendant's timely notice of appeal identifies both the judgment and the denial of his post-judgment motions as the subjects of the appeal. The denial of defendant's motion for new trial is not appealable. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18-19.) We follow defendant's approach in his briefing and only assess only the validity of the judgment, not the order denying his motion to vacate and/or set aside the judgment.

of the trial court. (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

In an unlawful detainer action for nonpayment of rent, the plaintiff must prove that the tenant has defaulted on the payment of rent, the tenant was properly served with written notice to pay rent or quit the premises of at least three days, and the tenant failed to pay rent and remained in possession of the property after the notice period expired. (Code Civ. Proc., § 1161, subd. (2); *Frazier v. Superior Court* (2022) 86 Cal.App.5th Supp. 1, 7 (*Frazier*).) "A valid three-day pay rent or quit notice is a prerequisite to an unlawful detainer action. [Citations.] Because of the summary nature of an unlawful detainer action, a notice is valid only if the lessor strictly complies with the statutorily mandated notice requirements." (*Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 697.) A three-day notice must specify the amount of rent due, and a notice demanding rent in excess of the amount due will not satisfy this requirement. (*Ibid*.)

A fee is not considered rent. (See *Heffesse v. Guevara* (2025) 108 Cal.App.5th Supp. 74, 82-83 [assessing whether payment of a code enforcement fee is considered rent under the Los Angeles Rent Stabilization Ordinance].) Thus, a three-day notice that includes late fees in the past-due rent calculation is an overstatement of rent which renders the notice void. (*Del Monte Properties & Investments, Inc. v. Dolan* (2018) 26 Cal.App.5th Supp. 20, 24-25.) A claim that the notice overstates rent owed is an affirmative defense. (*Nourafchan v. Miner* (1985) 169 Cal.App.3d 746, 752, disapproved on another ground in *Minelian v. Manzella* (1989) 215 Cal.App.3d 457, 464.) Affirmative defenses require proof by a preponderance of the evidence. (*Western Land Office, Inc. v. Cervantes* (1985) 175 Cal.App.3d 724, 731.) The preponderance of the evidence standard "requires the burdened party 'to convince the trier of fact that the existence of a particular fact is more probable than its nonexistence . . . .'" (*Beck Development Co. v. Southern Pacific Transportation Co*. (1996) 44 Cal.App.4th 1160, 1205.)

In the case *sub judice*, the lease included a $50 fee for any late rent payments. The complaint alleged defendant owed $7,236 in unpaid rent accumulated between June 2023 and April 2024. Manoochehri testified he personally calculated the amount of unpaid rent due as

expressed in the rent ledger and that the amount of rent due in the notice excluded all late fees.[6] The defense ineffectively cross-examined Manoochehri on this point and presented no affirmative evidence that the statement of rent in the notice included even a penny in late fees. Defendant testified that he was charged late fees and he objected to them, but his testimony did not address whether the statement of rent in the notice included those late fees. There is no evidence in the record to support defendant's position that he satisfied his burden to prove the defense of overstatement of rent. Thus, defendant's evidence was not uncontradicted, unimpeached, and of such character and weight as to leave no room for judicial determination that it was insufficient to support the court's finding. (*Lent v. California Coastal Com.*, *supra*, 62 Cal.App.5th at p. 837.)[7]

Compliance with Section 1962

Defendant contends it was plaintiff's burden to prove compliance with section 1962 as part of its case in chief and that it failed to satisfy this burden. Alternatively, defendant maintains that even as an affirmative defense, there was insufficient evidence to support the court's determination that plaintiff complied with the statute.

*Section 1962 is an Affirmative Defense*

"In reviewing questions of statutory interpretation, ""'our fundamental task is "to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." . . . We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. We give the language its usual and ordinary meaning, and "[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." . . . If, however, the statutory language is ambiguous, "we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history."

---

[6] The rent ledger in the record was used to refresh Manoochehri's recollection during his trial testimony, but this document was not introduced into evidence at trial.

[7] It is unnecessary to address defendant's legal argument that the late fee provision in the lease was an invalid liquidated damages clause considering our factual determination that there was no evidence the notice included late fees in the statement of rent due.

. . . Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute.'"'"'" (*Center for Local Government Accountability v. City of San Diego* (2016) 247 Cal.App.4th 1146, 1153.)

Section 1962 imposes an obligation upon any successor owner or manager of a residential real property to disclose two pertinent pieces of information to their tenants, within 15 days of succeeding the previous owner or manager. (§ 1962, subd. (c).) First, the name, telephone number, and usual street address at which personal service of process may be made upon the property manager, owner of the premises, or a person who is authorized to act for and on behalf of the owner for the purpose of receiving service of process and all notices and demands. (*Id.*, subds. (a)(1), (c).) Second, the name, telephone number, and address of the person or entity to whom and where rent payments shall be made. (*Id.*, subds. (a)(2), (c).) This information "shall be kept current and this section shall extend to and be enforceable against any successor owner or manager, who shall comply with this section within 15 days of succeeding the previous owner or manager." (*Id.*, subd. (c).) A successor owner or manager who fails to comply with these requirements is prohibited from serving a three-day notice to pay rent or quit or otherwise attempting to evict the tenant for nonpayment of rent that accrued during the period of noncompliance with these statutory requirements. (*Ibid*).)

This court has recognized, without deciding, that a violation of section 1962 is an affirmative defense. (See *Group XIII*, *supra*, 85 Cal.App.5th at p. Supp. 6; *DLI Properties LLC v. Hill* (2018) 29 Cal.App.5th Supp. 1, 4.) There is no conflicting authority. Relying on language used in *Group XIII*—that "compliance with section 1962 is effectively a jurisdictional prerequisite to an unlawful detainer action" (*Group XIII*, *supra*, at p. Supp. 15)—defendant contends it was plaintiff's burden to prove compliance with section 1962 as part of its prima facie case. Cases are not authority for propositions not considered (*Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, 756 (*Rental Housing*)); nevertheless, we recognize the *Group XIII* decision requires clarity on this point.

In unlawful detainer cases, compliance with a legislative requirement may be considered an element of the lessor's prima facie case, an affirmative defense, or neither, depending on the language used in the ordinance or statute.  (*Frazier*, *supra*, 86 Cal.App.5th at p. Supp. 7.)  In *Frazier*, this court assessed an ordinance which stated that a landlord "must comply" with an obligation to submit any notice of termination to the Department of Housing, but did not provide a consequence for the lessor's failure to comply and did not specify whether submittal of the notice was an element of the lessor's prima facie case or an affirmative defense.  (*Id*. at p. Supp. 9.)  Recognizing that other provisions of the ordinance set out consequences for a lessor's noncompliance and that "[w]hen lawmakers use materially different language in statutory provisions addressing the same or related subjects, the normal inference is that the legislative body intended a difference in meaning[,]" we held that "submission of the notice to the Department [of Housing], while required, was not intended to be an element of a landlord's case-in-chief."  (*Id*. at p. Supp. 10.)

The circumstances in *Frazier* were distinguishable from *Rental Housing*, *supra*, 171 Cal.App.4th 741.  In the latter case, a group of landlords challenged a just cause eviction ordinance which imposed on lessors the burden "to allege and prove" that a dwelling is exempt from the ordinance as a prerequisite to issuing a notice terminating the tenancy or pursuing an unlawful detainer action.  (*Id*. at pp. 755-756.)  The landlords asserted (1) the ordinance was preempted by the Evidence Code because it impermissibly conflicted with the statutory allocation of the burden of proof, and (2) compliance with the ordinance was an affirmative defense and not part of a lessor's prima facie case for unlawful detainer.  (*Ibid*.)  The Court of Appeal rejected these contentions, explaining that "[w]e discern no logical contradiction between [the] section . . . which requires a landlord to allege and prove a unit is exempt from the Ordinance as part of the landlord's case-in-chief, and [the] section . . . which allows the tenant to defend an unlawful detainer action for a landlord's failure to allege and prove required facts."  (*Id*. at p. 756.)

Like the ordinance in *Frazier* but contrary to *Rental Housing*, section 1962 and its legislative history do not state whether compliance with subdivision (c) is an affirmative

9

defense or an element of a lessor's prima facie case.  Consequently, we must resort to other tools to interpret the intent of the Legislature.  (*Center for Local Government Accountability v. City of San Diego*, *supra*, 247 Cal.App.4th at p. 1153.)  "'To understand the intended meaning of a statutory phrase, we may consider use of the same or similar language in other statutes, because similar words or phrases in statutes in pari materia ordinarily will be given the same interpretation.'" (*Wendz v. State Dept. of Education* (2023) 93 Cal.App.5th 607, 633.)  Statutes are considered to be in pari materia when they relate to the same subject, the same class of persons or things, or they have the same purpose or object.  (*Ibid*.)

Section 1942.4 (a habitability statute) provides that "[a] landlord of a dwelling may not demand rent, collect rent, issue a notice of a rent increase, or issue a three-day notice to pay rent or quit pursuant to subdivision (2) of Section 1161 of the Code of Civil Procedure, if" the premises is uninhabitable prior to the lessor's demand or notice.  (§ 1942.4, subd. (a).)  Section 1942.5 (an anti-retaliation statute) provides, "[i]f the lessor retaliates against the lessee because of the exercise by the lessee of the lessee's rights under this chapter or because of the lessee's complaint to an appropriate agency as to tenantability of a dwelling, . . . the lessor may not recover possession of a dwelling in any action or proceeding . . . within 180 days of [certain specified events]." (§ 1942.5, subd. (a).)  Both statutes, which prevent lessors from recovering possession due to statutory violations but without specifying who bears the burden of proof, are deemed affirmative defenses.  (*Boyd v. Carter* (2014) 227 Cal.App.4th Supp. 1, 7, and cases cited.)

Considering that the provision in section 1962—"[a] successor owner or manager shall not serve a notice pursuant to paragraph (2) of Section 1161 of the Code of Civil Procedure or otherwise evict a tenant for nonpayment of rent"— is roughly similar to the language used in sections 1942.4 and 1942.5, relate to the same subject and class of persons or things (landlord-tenant relationships), and have the same purpose or object (protecting tenants), we presume the Legislature intended section 1962 to be an affirmative defense.  (See *Wendz v. State Dept. of Education*, *supra*, 93 Cal.App.5th at p. 627.)  Accordingly, we hold that compliance with section 1962 is an affirmative defense for which defendant bore the burden of proof.  To the

extent the "jurisdictional prerequisite" language in the *Group XIII* decision can be interpreted to make compliance with section 1962 an element of a plaintiff's prima facie case, we disapprove of it. (See, e.g., *Minelian v. Manzella*, *supra*, 215 Cal.App.3d at p. 464.)

*Defendant Failed to Overcome the Burden of Proof*

It is defendant's contention he proved noncompliance with subdivision (c) of section 1962 and plaintiff failed to present any rebuttal evidence. In particular, defendant argues Manoochehri's oral testimony that he gave notice of the change of ownership to defendant was not admissible to prove the contents of the writing under Evidence Code section 1523, that his vague testimony was insufficient to establish compliance with section 1962, subdivision (c), and that defendant's testimony established essential omissions in the notice of change of ownership.

The fatal flaw to the defense's approach at trial and on appeal is that defendant hung his hat on the proposition that plaintiff bore the burden to prove compliance with section 1962 as part of its prima facie case. As discussed *ante*, that is not a correct understanding of the law. "Where, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor. That is because unless the trial court makes specific findings of fact in favor of the losing [defendant], we presume the trial court found [defendant's] evidence lacks sufficient weight and credibility to carry the burden of proof." (*Bookout v. State of California ex rel. Dept. of Transportation*, *supra*, 186 Cal.App.4th at p. 1486.)

On cross-examination, Manoochehri was asked whether defendant was given notice as to the change of ownership and management. Manoochehri answered that "within the last 12 months," "towards the end of 2023," a written notice of change of ownership was mailed to him and posted on his door in addition to the common area of the complex. Manoochehri further testified the notice contained "all the information pertaining to the new ownership" and "anything else I [*sic*] needed to know . . . where to pay rent and everything like that." The defense did not seek to introduce into evidence the November 28, 2023 notice of change of ownership that was attached as an exhibit to plaintiff's opposition to defendant's motion for

summary judgment. Nor did the defense directly inquire of Manoochehri whether the purported notice contained the requisite information for service of process. Defendant confirmed in his testimony that he received a document from plaintiff about a change in ownership which "stated the new owner, [and] where to mail the rent check." In response to being asked whether the notice "provide[d] information about . . . the agent for service of process" defendant replied "[n]o, I don't believe so."

The court found "there were credibility issues with regard to some of the defendant's answers to questions." Though defendant's testimony was without direct contradiction, it was equivocal, the trial court was not bound to accept an interested party's testimony as true (*Blackburn v. Drake* (1963) 211 Cal.App.2d 806, 814), and "this court is not in a position to weigh any conflicts or disputes in the evidence, or to assess the credibility of the witnesses" (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1121). Defendant's testimony, while uncontradicted and unimpeached on this point, was not of such character and weight as to prevent the court from finding that defendant failed to carry his burden to prove that plaintiff violated section 1962. (See *Lent v. California Coastal Com.*, *supra*, 62 Cal.App.5th at p. 837; see also *Bookout v. State of California ex rel. Dept. of Transportation*, *supra*, 186 Cal.App.4th at pp. 1486-1487.) Therefore, defendant is not entitled to reversal on this record.

## DISPOSITION

The judgment and order denying defendant's motion to vacate or set aside the judgment are affirmed. The appeal from the denial of defendant's motion for new trial is dismissed as non-appealable. Plaintiff to recover its costs on appeal.

_____
P. McKay, P. J.

We concur:

_____                    _____
Guillemet, J.                                              Hobbs, J.

12